# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:15-1165** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **SHAWN WHITEBREAD,** | **:** | |
| **Defendant** | **:** | |

## <u>MEMORANDUM</u>

Currently before the court are the plaintiff's, Jane Doe's, motion for default judgment, (Doc. 12), and motion for damages, (Doc. 17), which includes a request for compensatory damages, punitive damages, and attorneys' fees and costs. The plaintiff's motion for default judgment and her motion for damages are **GRANTED IN PART**. The court will enter judgment against the defendant, Shawn Whitebread ("Officer Whitebread"), with respect to most of the plaintiff's claims in her complaint, (Doc. 1). The court will award the plaintiff $100,000.00 in compensatory damages and $150,000.00 in punitive damages based on the emotional harm she has and will continue to suffer due to Officer Whitebread's actions. The court will also award the plaintiff a total of $19,678.00 in attorneys' fees and costs.

## I.   BACKGROUND

On June 24, 2013, Officer Whitebread allegedly sexually assaulted the plaintiff. At the time of this incident the defendant was employed as a police officer with the Wilkes-Barre Township police department. On July 15, 2015, the plaintiff filed a complaint in this court alleging violations of the Fourth and Fourteenth Amendments of the United States Constitution and, as such, violations to Title 42, Section 1983 of the United States Code. In addition, the plaintiff included claims of assault, battery, and intentional infliction of emotional distress ("IIED") under Pennsylvania state law. All claims were brought against the defendant in his individual capacity.

The defendant failed to enter an appearance or respond to the plaintiff's complaint as required by Federal Rule of Civil Procedure 12. On December 4, 2015, the plaintiff obtained an entry of default from the Clerk of Court. On March 8, 2016, the plaintiff filed a motion to enter default judgment pursuant to Federal Rule of Civil Procedure 55. No brief in support was filed. Therefore, on October 14, 2016, the plaintiff requested that this court deem her motion an "application" in order to obviate the need to file a supporting brief. (Doc. 13).

2

On October 31, 2016, the court granted the plaintiff's request to deem her motion an "application." (*See* Docs. 14–15). The court also determined that a hearing would be required to assess damages prior to entering judgment. As a result, the court also ordered the plaintiff to submit a request for damages, costs, and fees in advance of the hearing. The plaintiff submitted her motion for damages on December 12, 2016. (Doc. 17). A hearing was held on January 26, 2017 where the plaintiff briefly affirmed the facts stated in her affidavit, which was previously submitted with her motion for damages. On February 2, 2017, at the court's direction, the plaintiff's counsel submitted a more detailed request for attorneys' fees. (Doc. 19).

## II.   THE MOTION FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 provides a two-step process to be used by a party seeking a default judgment against a defendant. At step one, Rule 55(a) provides that the Clerk "must" enter a default against a party who fails "to plead or otherwise defend an action, and that action is shown by affidavit or otherwise." A default judgment is then obtained pursuant to Rule 55(b). If the claim is not for a sum certain the party seeking default judgment must apply to the court for the judgment. FED. R. CIV. P. 55(b)(2). The court's

decision to render a default judgment is discretionary. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). However, when a defendant fails to appear, default judgment is authorized "solely on the fact that the default has occurred." *Anchorage Assocs. v. Virgin Island Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990).

Although all well-pleaded facts in the plaintiff's complaint are accepted as true after entry of default, the default itself does not establish liability or conclusions of law. *Martin v. Nat'l Check Recovery Servs., LLC*, Civil No. 1:12-CV-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §2688.1 (4th ed. 2016). "[T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A CHARLES ALAN WRIGHT ET AL., *supra*, at §2688.1. A default also does not establish the amount of damages that are appropriate. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Martin*, 2016 WL 3670849, at *1. The determination of damages must be made by the court. 10A CHARLES ALAN WRIGHT ET AL., *supra*, at §2688. Under Rule 55(b)(2), a hearing may be used to determine any facts needed to establish liability and facts needed to determine damages. FED. R. CIV. P. 55(b)(2). Having held a hearing, pursuant

to Rule 52(a), the court makes the following findings of facts and conclusions of law, established from both the plaintiff's affidavit and her testimony.

## A.    Findings of Fact[1]

On the night of June 24, 2013, the defendant, then a Wilkes-Barre police officer, drove his marked vehicle behind the plaintiff's vehicle while she was parked on a street in Wilkes-Barre, Pennsylvania. It appears from the affidavit that this stop occurred around 12:00–1:00 a.m. in the morning. After approaching the plaintiff, Officer Whitebread confiscated what he suspected was marijuana. Thereafter, Officer Whitebread instructed the plaintiff to sit inside his police vehicle. After getting another radio call, he asked the plaintiff to get back into her own vehicle and wait for him. Once inside her own vehicle, the plaintiff waited until Officer Whitebread returned to her car. Officer Whitebread then drove behind the plaintiff and followed her to her apartment.

---

[1] Although the court accepts the allegations in the plaintiff's complaint as true, her affidavit provides more detail than her complaint regarding what occurred on June 24, 2013. At the hearing, the plaintiff chose not to testify about the night in question and appears to rely mostly upon her affidavit. (Doc. 17, Ex. A). Thus, the court relies on her affidavit with respect to certain facts regarding that evening.

Upon entrance into her apartment, Officer Whitebread advised the plaintiff that she could go to jail for the suspected marijuana and that she could lose her job and car. The plaintiff began crying. Officer Whitebread then asked, "What are we going to do about this?" Officer Whitebread thereafter left the plaintiff's apartment but instructed her that he would return at 3:00 a.m. to check on her, around two hours later.

Officer Whitebread returned at 3:00 a.m. After looking around the plaintiff's apartment, Officer Whitebread began touching the plaintiff, which she interpreted as his desire to have sex with her. The plaintiff described herself as being scared that Officer Whitebread would hurt or kill her. Officer Whitebread then engaged in sex with the plaintiff. She described his belt and pistol as being close by at all times, which increased her fear of harm. At no time did the plaintiff give her consent to the sex that occurred. The plaintiff described feeling trapped and powerless by the situation. Officer Whitebread left the plaintiff's apartment following this encounter without further incident. It appears that he was fired from the department after this incident, although there is no indication in the record why or if it was related in any way to this incident.

In addition to confirming the statements made in her affidavit, during the hearing the plaintiff testified that she suffered and continues to suffer from symptoms of emotional distress due to the assault. In particular, the plaintiff testified that after the event she began recalling memories of past physical abuse from other relationships. She described being afraid in her own home because Officer Whitebread knew where she lived and might come back. She testified that she is now afraid of the police and has experienced anxiety attacks when seeing police officers. As she described it, she does not know if they are "good" or "bad" police officers. The plaintiff also testified concerning an incident where she ran into Officer Whitebread in a local convenience store. Upon seeing him, the plaintiff felt the need to hide out of fear. Although the plaintiff has moved, she remains afraid that she will run into Officer Whitebread.

The court finds the plaintiff's testimony credible. It was also clear, during the hearing, that the plaintiff has a difficult time discussing the incident and it has had a dramatic effect on her. The plaintiff testified that she sought treatment from her medical doctor and was prescribed anxiety and depression medication after the incident; however, she does not currently take this medication. She did not provide any medical testimony, medical reports, or

other expert medical evidence. What is clear from the plaintiff's testimony is that she continues to experience emotional distress due to the sexual assault.

### B.    Conclusions of Law

The court will enter default judgment on the plaintiff's assault, battery, and Section 1983 claims. The court, however, cannot award default judgment on the IIED claim. Pennsylvania law requires that there be proof of severe emotional distress as shown by objective medical evidence. *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). The plaintiff has not offered any objective medical evidence and this is required.

Default judgment will be entered with respect to the assault and battery claim. In Pennsylvania, a battery is defined as a "harmful or offensive contact" with another's person. *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n. 4 (Pa. 2008) (quoting *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997)). An assault is defined as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960). The nonconsensual sexual encounter between the plaintiff and Officer Whitebread was patently offensive and harmful to the plaintiff's emotional

health. *Cf. Kintzel v. Kleeman*, 965 F. Supp.2d 601, 609 (M.D. Pa. 2013). In addition, Officer Whitebread's gestures to the plaintiff for sex while armed appears intended to put her in apprehension of the sexual assault. As such, default judgment should be entered with respect to these claims.

The court will also enter default judgment with respect to the plaintiff's Section 1983 claim. The plaintiff's Section 1983 claim is premised on the substantive due process right to bodily integrity. In order to be liable under Section 1983 for this constitutional violation, Officer Whitebread must have been acting "under color of law." 42 U.S.C. §1983. The court finds that he was.

"The traditional definition of acting under color of state law requires that the defendant in a [Section] 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). "Courts in the Third Circuit have extended this line of reasoning and found that police officers, even when in

uniform and on duty, were not acting under color of state law for purposes of [Section] 1983, so long as the officer's actions were of a personal nature and the officer did not arrest, or attempt to arrest, the victim." *Stroby v. Egg Harbor Twp.*, 754 F. Supp.2d 716, 720 (D.N.J. 2010).

Here, Officer Whitebread's actions were not simply personal in nature. He was uniformed and armed when interacting with the plaintiff. In addition, he used his authority as an officer to enter the plaintiff's apartment twice during the early morning hours while most citizens are asleep. He also made threats of arrest based on his confiscation of suspected marijuana, attempting to scare the plaintiff into submission. It is clear the plaintiff did not feel free to leave, instead feeling trapped. Based on these facts, the court concludes that Officer Whitebread was acting under color of law when he decided to sexually assault the plaintiff. Accordingly, default judgment will be entered against him on this claim.

## III.   THE MOTION FOR DAMAGES AND ATTORNEYS' FEES

Based on a review of comparable cases, the plaintiff will be awarded $100,000.00 in compensatory damages and $150,000.00 in punitive damages. She will be awarded her attorneys' fees and costs in full.

### A.    Emotional Damages

The law on emotional damages in Section 1983 cases is well-established. "[W]hen [Section] 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986). Compensable injuries "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Id*. at 307 (internal quotation marks omitted). However, "[a] plaintiff in a section 1983 case cannot recover for emotional distress unless he or she presents evidence of 'actual injury.'" *Bolden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 34–35 (3d Cir. 1994) (quoting *Carey v. Piphus*, 435 U.S. 247 (1978)). Medical evidence is not required to recover emotional distress damages. *Id*. at 35. Instead, "[d]istress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Carey*, 435 U.S. at 263–64. "Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others." *Id*. at 264 n. 20. Based on the

plaintiff's testimony, the court concludes that she has shown actual injury and that she entitled to recover emotional damages.

The court is faced with a "difficult task" in attempting to place a value on the plaintiff's emotional damage, "both because the extent of emotional injury does not readily translate into dollar amounts and because few truly comparable cases can be found." *Mathie v. Fries*, 121 F.3d 808, 814 (2d Cir. 1997). The Third Circuit has not discussed what factors might go into assessing a damages award for pure emotional distress. Many courts methodically collect and compare similar cases to establish the appropriateness of the award.[2] The court has attempted to do so here.

Based on a review of cases involving officers assaulting members of the community or arrestees, which the court finds comparable to the plaintiff's case, the range of awards for emotional damages begins at $25,000.00 and

---

[2] *See Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2016 WL 4541447, at *7 (D. Kan. Aug. 30, 2016); *Doe v. Neal*, No. SA-14-CA-102-XR, 2015 WL 3688259, at *4 (W.D. Tex. June 12, 2015); *Nimmons v. Clark*, No. 1:13-cv-03786-WSD, 2015 WL 1191210, at *3–4 (N.D. Ga. Mar. 16, 2015); *Trinidad v. City of Boston*, No. 17-111679-DPW, 2011 WL 915338, at *6 (D. Mass. Mar. 15, 2011); *Mize v. Tedford*, No. 18-CV-10660-DT, 2009 WL 1508375, at *2 (E.D. Mich. May 29, 2009); *Doe v. Mann*, No. 6:05-cv-259-Orl-31DAB, 2007 WL 2028833, at *5 (M.D. Fla. July 10, 2007).

in one case reached $750,000.00.[3] For example, in *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992), a jury awarded a plaintiff a total of $200,000.00 in emotional damages, with $150,000.00 awarded against the officer who sexually assaulted the plaintiff and $50,000.00 awarded against the officer's supervisor. In that case, the plaintiff was falsely arrested, locked in the officer's police car, driven to an isolated area, and forced to perform oral sex on the officer. *Parrish*, 963 F.2d at 203. The officer was known to have a propensity to commit violence. *Id.* Similarly, in *Trinidad v. City of Boston*, No. 07-111679-DPW, 2011 WL 915338 (D. Mass. Mar. 15, 2011), the court entered default judgment against a defendant officer in the amount of $200,000.00. The plaintiff in that case was a 19 year old prostitute who the

---

[3]*See*, *Neal*, 2015 WL 3688259 (awarding $750,000.00 in emotional damages on default judgment in a case involving the rape of a pregnant arrestee on the side of public road while the arrestee was handcuffed and bound); *Trinidad*, 2011 WL 915338 (awarding $200,000.00 in emotional damages on default judgment); *Campbell v. Graham*, No. 3:06-CV-444, 2010 WL 2901826 (E.D. Tenn. July 21, 2010) (awarding $25,000.00 in emotional damages on default judgment); *Mize*, 2009 WL 1508375 (awarding $350,000.00 in emotional damages on default judgment); *Lewis v. Pugh*, 289 F. App'x 767 (5th Cir. 2008) (upholding jury award of $50,000.00 in emotional damages); *Rogers v. City of Little Rock Ark.*, 152 F.3d 790 (8th Cir. 1998) (upholding jury award of $100,000.00 in emotional damages); *Hyde v. Nicholas*, 32 F. App'x 127 (5th Cir. 2002) (affirming $50,000.00 emotional damages awarded granted on default judgment); *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992) (upholding jury award of $200,000.00 in emotional damages against the assaulting officer and his supervisor).

officer had targeted, stalked, and sexually assaulted twice. *Trinidad*, 2011 WL 915338, at *1. The plaintiff in that case also had medical treatment records to substantiate her emotional harm. *Id*. at *5.

While the court could not find a case that included all of the unique circumstances in the plaintiff's case, the court did find *Campbell v. Graham*, No. 3:06-CV-444, 2010 WL 2901826 (E.D. Tenn. July 21, 2010) to be the most comparable to the plaintiff's case. In that case, default judgment was entered in favor of the plaintiff in the amount of $25,000.00 for purely emotional harm. *Campbell*, 2010 WL 2901826, at *3. In *Campbell*, the victim was engaged in a domestic dispute with her boyfriend when the defendant deputy officer was called to the scene. *Id.* at *1. Instead of making an arrest, the officer separated the couple and agreed to transport the plaintiff to her home. *Id.* During the transport, with the plaintiff's consent, the officer drove the plaintiff to a church parking lot instead of her home in order to talk. *Id.* While there, the officer performed oral sex on the plaintiff victim and forced her to perform oral sex on him without the plaintiff's consent. *Id.* The plaintiff in *Campbell* was afraid to resist the officer's advances based on his position as an officer. *Id.* The plaintiff did not have any medical expenses or records

14

because she could not afford treatment and the award was entirely premised on her testimony to the court. *Id.* at *2.

The court does not agree that $25,000.00 is the appropriate measure of damages here. The court finds that this amount is unusually low. In addition, unlike the plaintiff in *Campbell*, the plaintiff here did seek some treatment and was apparently prescribed medication. However, comparable to *Campbell*, the plaintiff has not submitted medical records or other expert reports to clarify the extent of her emotional damages. There is no indication that the plaintiff is currently undergoing mental health treatment, such as group or individual counseling. She has apparently suffered no wage loss or other loss of income. The incident, while disgusting and egregious, was a singular, isolated incident. While it is clear that the plaintiff did not consent to the encounter, thankfully, there is no indication that Officer Whitebread used extreme violence or caused physical harm. Based on the plaintiff's affidavit and testimony alone, the court finds $100,000.00 to be the appropriate measure of compensatory damages for the plaintiff's emotional harm.

## B.    Punitive Damages

The court will also award the plaintiff $150,000.00 in punitive damages. "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. Sch. Dist.*, 477 U.S. at 306 n.9. Punitive damages are appropriate when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[4] *Alexander v. Riga*, 208 F.3d 419, 430–31(3d Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's

---

[4] This standard is similar to the standard under Pennsylvania law applicable to the plaintiff's state law claims. Pennsylvania follows the Restatement (Second) of Torts and allows punitive damages where the defendant has engaged in "outrageous" conduct, defined as "acts done with a bad motive or with a reckless indifference to the rights or interests of others." 1 SUMM PA. JUR. 2D TORTS §11:39 (2d ed.); *see also Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963). In an assault and battery case, there must be malicious, wanton, reckless, willful, or oppressive conduct on the part of the defendant. *Chambers*, 192 A.2d at 358. The defendant's conduct would meet this standard under Pennsylvania law.

action need not necessarily meet this higher standard." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

In order to be deemed constitutional, a punitive award cannot be "grossly excessive." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996). "The Supreme Court has established three guideposts to determine whether a punitive damages award [is] grossly excessive: (1) the degree of reprehensibility of the defendant's actions; (2) the disparity between the harm or potential harm suffered by the plaintiff and its punitive damages award; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A.*, Inc., 801 F.3d 347, 362–63 (3d Cir. 2015) (citing *Gore*, 517 U.S. at 562). The need for deterrence may also be an important consideration. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460 (1993) (Stevens, J., joined by Rehnquist, C.J., and Blackmun, J.) ("It is appropriate to consider . . . the possible harm to other victims that might have resulted if similar future behavior were not deterred."). However, the degree of reprehensibility is, normally, the "most important indicium" of the award's constitutionality. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

The court will award punitive damages as a 1:1.5 ratio with the plaintiff's request for emotional damages, resulting in a $150,000.00 punitive award. While normally a 1:1 ratio serves as sufficient deterrence for malicious conduct, the court finds that a higher ratio is warranted. *Cf. Campbell*, 2010 WL 2901826, at *3 (awarding punitive damages on a 1:1 ratio). Here, the defendant's conduct went beyond mere recklessness into the realm of intentional and motivated by evil intent. Officer Whitebread's actions were also clearly reprehensible. He preyed upon a member of the community in the late night hours. In addition, although Officer Whitebread was apparently fired from his position, it appears that he remains free in the community. The plaintiff is left with the fear or running into him at any moment. Under these circumstances, the court finds that an award of $150,000.00 is warranted.

### C.    Attorneys' Fees and Costs

The plaintiff may also recover attorneys' fees and costs incurred in this action. Reasonable attorney's fees are clearly recoverable by a prevailing party in a Section 1983 action. 42 U.S.C. §1988(b). The party seeking the fees bears the initial burden of demonstrating the reasonableness of the fees. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir.

18

2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To meet this burden, the fee petitioner "must submit evidence supporting the hours worked and the rates claimed." *Rode*, 892 F.2d at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Once the fee petitioner has met this initial burden, the party challenging the request bears the burden of showing that the request is unreasonable. *McKenna v. City of Phila.*, 582 F.3d 447, 459 (3d Cir. 2009). Assuming the plaintiff has met his or her initial burden, the court is without discretion to reduce the requested amount downward without objections from the defendant. *Id.*

"Parties prevailing in federal court may [also] recover taxable costs referenced in [Federal Rule of Civil Procedure] 54(d)(1) and enumerated in 28 U.S.C. §1920." *Petrunich v. Sun Bldg. Sys., Inc.*, 625 F. Supp.2d 199, 211 (M.D. Pa. 2008); *see also Reger v. Numours Found.*, 599 F.3d 285, 288 (3d Cir. 2010). They may also seek "related nontaxable expenses." FED. R. CIV. P. 54(d)(2). This may include "costs for postage, telephone, expert fees, travel, deposition transcripts, shipping, parking, lodging[,] and food." *Bowers v. Foto-Wear, Inc.*, No. 3:CV-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007).

Here, the plaintiff seeks attorney's fees in the amount of $19,025.00 and costs in the amount of $653.00. The plaintiff seeks a total of $6,275.00 in fees for attorney Kimberly D. Borland for his 25.1 hours of work billed at $250.00 per hour. She seeks a total of $12,750.00 in fees for attorney David P. Tomaszewski for his 63.75 hours of work billed at $200.00 per hour. In support of her request, the plaintiff submitted affidavits from her attorneys. (Doc. 17, Exs. B–C). In addition, the plaintiff submitted billing statements with detailed time entries for both of her attorneys. (*See* Doc. 19).

The court finds that the plaintiff has met her burden with respect to the reasonableness of Attorney Borland's and Attorney Tomaszewski's hourly fees. In his affidavit, Attorney Borland states that he has been practicing law in this state since 1976. His practice is wide ranging but primarily involves civil litigation, particularly employment litigation. In his separate affidavit, Attorney Tomaszewski states that he has been practicing law in this state since 1990. Like Attorney Borland, he has been engaged in the private practice of law, particularly civil litigation in the employment context. This court recently found an hourly fee of $250.00 per hour to be reasonable for a civil rights attorney with twenty-five years of experience in this area, the Scranton/Wilkes-Barre legal market. *See Moffitt v. Tunkhannock Area Sch. Dist.*, No. 3:13-cv-01519-

MEM, Doc. 109 (M.D. Pa. Jan. 20, 2017). In addition, the plaintiff has submitted the detailed time entries of both attorneys to meet her burden with respect to the time spent on the case. Because the plaintiff has satisfied her burden with respect to her attorneys' fees, the court will award her the full amount requested, $19,025.00.

The plaintiff's request for costs will also be awarded in full. The plaintiff seeks compensation for the filing of the complaint, compensation for service of the complaint, and recovery for a small records fee incurred for research. (*See* Doc. 17, at 14). These expenses total $653.00. All of the costs in the plaintiff's request for costs are recoverable. As such, the plaintiff is entitled to an award of $653.00 in costs.

## IV.   CONCLUSION

The plaintiff's Rule 55 motion for default judgment based on Officer Whitebread's failure to plead, (Doc. 12), is **GRANTED IN PART**. Judgment shall be entered against the defendant with respect to the plaintiff's assault, battery, and Section 1983 claims. The plaintiff's motion for damages, including attorneys' fees and costs, (Doc. 17), is **GRANTED IN PART**. The plaintiff will be awarded $100,000.00 in compensatory damages for emotional

harm and $150,000.00 in punitive damages against Officer Whitebread for a total damage award of $250,000.00. She will also be awarded $19,678.00 in attorneys' fees and costs. A separate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 14, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1165-02.wpd